Marshall, C. J.
The first question to be considered is whether the commission erred in finding that the charge of $7 per car is a reasonable charge. The railroad company offered a great deal of testimony on that point and no testimony was offered by the complainant. The undisputed testimony shows that the actual expense to the railroad company of the transportation is more than $7 per car, without taking into consideration any margin of profit or interest upon investment. It is very clear therefore that if it was proper for the commission to make any finding upon this point, its finding is fully justified by the evidence.
It is contended, however, by the complainant that no question was made about the reasonableness of the rate, in the original complaint, and that it is therefore prejudiced by having any finding made, because the finding might interfere with any future inquiry in which that issue would be made. An examination of the complaint shows, however, that the commission could not overlook making a finding on this point. Paragraph 7 of the complaint contained the following language: “Complainant has been subjected to the payment of rates and charges for said transportation *258 which were when exacted and still are unjust and unreasonable in violation of Section 504 of the General Code.”
Section 504, General Code, is the particular section requiring that charges shall be reasonable and just and surely an allegation of the violation of that section must be held to raise the issue of the reasonableness of the freight rate. It is further found upon an examination of complainant’s brief that it is calculated that the loss and damage to complainant during the year 1920 was nearly $10,000. It is true that that claim is based upon the proposition that if all double-deck cars had been furnished at the rate of $7 per car, that loss and damage would have been avoided, but it is equally true that there never was any agreement or obligation to furnish all double-deck cars, and it also clearly appears in the evidence that the railroad company did not have double-deck cars in sufficient number for that purpose. A careful reading of the entire complaint convinces us that there was no inadequacy of service or lack of equipment, and that the hogs could be just as well transported in single-deck cars, providing a sufficient number of cars was furnished, as in double-deck cars, and the conclusion is therefore irresistible that the gravamen of the complaint is that it has been more expensive to the Provision Company to make the shipments in single-deck cars at $7 per car than it would have been to ship them in double-deck cars with twice the capacity of single-deck cars at the same rate of $7 per car. The railroad company’s method and manner of transporting the hogs for the Provision Company has not been burdensome or inconvenient in any way, except in the matter of finan *259 cial loss. It seems quite sure, from an examination of the record and the briefs in this case, that if the railroad company had been willing to make a rate of $3.50 per car for single-deck cars, with the understanding that no double-deck cars would be furnished, the Provision Company would have been entirely satisfied. It is equally certain that if the Provision Company would agree to a flat rate of $14 per car, the railroad company would be satisfied to make the two-fo.r-one rule applicable to that portion of its traffic relating to shipments within the switching district of Cleveland. We have reached the conclusion that the rate is both the ostensible and the real basis of the complaint and that the finding of the commission that the rate was reasonable and just is justified.
The second branch of the inquiry relates to the claim of the shipper that the finding of the commission that double-deck stock cars are special equipment is prejudicial and that the failure of the railroad company to provide a sufficient number of double-deck cars to take care of the shipper’s business is a violation of Section 520, General Code, in that it is a failure to “furnish suitable cars.”
It does not appear that the commission has defined double-deck stock cars as special equipment; but the commission has referred to such cars as special equipment and it is difficult to see how they can be anything but special equipment if the word ‘ ‘ special” is to be taken in its ordinary signification. It is well known that there are many kinds and classes of rolling stock utilized in transportation service, such as coal cars, refrigerator cars, stock cars, tank cars, etc., and each class has its subdivisions. Coal *260 cars may be either flat-bottomed or hopper cars. Stock cars may be either single or donble-deck. ’Each kind- and class is specially designed for its own 'special field of service, and we are not aware that the interstate commerce commission, or any state commission, has ever attempted to interfere with the policy of carriers governing the relative numbers of cars in each class or subdivision. Neither do we think the commissions or the courts should enter into this field of inquiry. It is and should be a legislative problem, and it has been met by the general assembly of Ohie in the enactment of Section 520, General Code, in the employment of the following language: “If within its power so to do, and upon reasonable notice, each railroad shall furnish suitable cars for all persons who may apply therefor, for the transportation of any and all kinds of freight in car load lots.”
It will be seen that the only requirement is that the cars shall be suitable for the transportation of the particular kind of freight. Section 504, General Code, requires that the service and facilities shall be reasonably adequate, but this has nothing to do with special equipment or equipment of suitable kind. Nothing appears in the record to indicate that double-deck cars are in any sense more suitable than single-deck cars, or that, aside from the matter of expense, it can make any substantial difference to The Cleveland Provision Company which class of stock cars is provided. On the other hand, it is apparent that it does make a substantial difference to the railroad company whether it be required to provide a sufficient number of double-deck cars to handle all small stock which may be offered for shipment. Again we find in this record abundant evidence that *261 double-deck cars are special equipment and that the use of double-deck cars is limited strictly to the handling of small stock, while single-deck cars are adapted not only to handling small stock, but ail kinds of stock. The single-deck cars are also available for mixed loads of both large and small stock. It is also pointed out that at many shipping points, there are no facilities for loading double-deck cars; that single-deck cars are adapted to the transportation of many kinds of coarse freight other than live stock; that on account of the highly special nature of double-deck cars there is á large percentage of empty movements; that double-deck cars are out of service a larger portion of the year than single-deck cars, on account of the privately-owned cars of livestock, shippers. All of these factors enter into questions of policy, with which the courts have nothing to do, except in those cases where it can be and is in fact shown that the cars furnished are unsuitable to the transportation of the kind and character of freight offered. It clearly appears in this record that the only material difference between the single-deck and double-deck cars is that it takes twice as many ears of single-deck construction as would be required of double-deck construction.
The complaint filed by The Cleveland Provision Company with the public utilities commission does not allege an inadequate car equipment for its reasonable needs, neither is it pointed out in the complaint that the equipment is unsuitable in character, but, on the other hand, as hereinbefore stated, the gravamen of the complaint relates to the rates and charges exacted for the transportation, on the ground that they are unjust and unreasonable. If the *262 charges were $3.50 for each single-deck car, it is very apparent from an examination of this record that there would be no complaint on the ground of unsuitableness of equipment. The views herein expressed upon this branch of our inquiry are in harmony with the principles declared in United States v. Pennsylvania Rd. Co., 242 U. S., 208.
The third branch of our inquiry relates to the duty owing by the railroad to the complainant as to whether all the rules, and especially the two-for-one rule applicable to line-haul movements, are also applicable to industrial switching within the switching district of Cleveland, Ohio, and whether a failure to so apply the two-for-one rule amounts to a discrimination.
It has already been seen that the commission has ordered the railroad company to furnish to the complainant the same ratio of double-deck cars as it shall furnish to shippers in line-haul movements. The record shows that heretofore the railroad company was giving a higher ratio of double-deck cars to line-haul movements; but if the order of the commission in this respect is obeyed, and we assume that it will be obeyed, no complaint of discrimination can hereafter be based upon improper distribution, and the provisions of Section 520, General Code, requiring ratable distribution, must be held to be fully met. The complainant, however, is not satisfied with the ratable distribution of double-deck cars between industrial-switching and line-haul movements, but insists further that all rules applying to line-haul movements must be made applicable to industrial switching, and that a failure to do so amounts to a violation of the provisions of Section 567, General Code, which reads as follows:
*263 “No common carrier subject to tbe provisions of this chapter shall make or give undue or unreasonable preference or advantage to a particular person, company, firm, corporation or locality, or to any particular description of traffic, in any respect whatso'ever, or subject any particular person, company, firm, corporation or locality, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.
The record shows that the flat-rate charge, without the application of the two-for-one rule, is made applicable to all industrial switching of small livestock in Cleveland, and it is not shown that any other shipper in Cleveland served by industrial switching has been given the benefit of the two-for-one rule. It also clearly appears that in all line-haul traffic handled by the railroad company in switching service the railroad receives a charge upon each car moved regardless of the fact that the two-for-one rule may have applied to those cars in the line-haul movement. It must be borne clearly in mind that the two-for-one rule in line-haul movements does not amount to a fifty per cent, reduction of the freight rate, as it would if made applicable to flat-rate charges in industrial switching, because all line-haul movements are upon the basis of a certain charge per hundredweight, and the principal advantage to shippers in the application of the two-for-one rule relates to the matter of minimum weights. If the two-for-one rule should be made applicable to industrial switching, it would clearly amount to a discrimination against line-haul movements, if any claim of discrimination can in any *264 event be made as between industrial switching and line-haul movements. We are of the opinion, however^ that legal discrimination applies only to a preference or advantage to one shipper over another in the same class of service or where the same or similar conditions are prevalent.
It was stated in argument, by counsel for complainant, that in any shipment of small livestock from the Cleveland stockyards to any point outside of the city of Cleveland, although the distance might be less than from the stockyards to the Cleveland Provision Company’s plant, the two-for-one rule would apply, and this was urged as a ground for claiming discrimination. It was, however, stated by counsel for the railroad company, without contradiction, that the revenue which would accrue to the railroad company for the same short haul in a line-haul movement would be five or six times as much as the present flat-rate charge made to The Cleveland Provision Company. This is by reason of the fact that any line-haul movement, however short, is upon the basis' of a certain charge per hundredweight. All of these things clearly indicate that legal discrimination can only relate to the same or ■similar service.
In the case of United States, ex rel. Northwestern Warehouse Co., v. Oregon R. & Navigation Co., 159 Fed. Rep., 975, the United States district court of the district of Oregon construed Section 3 of the act of February 4, 1887, which is in all essential terms similar to the provisions of Section 567, General Code, and made the following declaration, which is found in the syllabus:
*265 “A common carrier is required not to make or give any undue or unreasonable preference or advantage to any particular firm, person, or corporation, or locality, or to any particular description of traffic, or subject any particular firm, corporation, or locality, or any particular description of traffic, nor to any undue or unreasonable prejudice or disadvantage in any respect whatsoever, but this duty only applies where the circumstances or conditions are substantially similar.”
That case also holds that such questions are questions of fact depending upon the environments and the conditions attending them. This was also the holding of the supreme court of the United States in the case of Texas & Pac. Ry. Co. v. Interstate Commerce Commission, 162 U. S., 197, 219.
Enough has already been stated to make it clearly appear that there is no similarity between transportation within the switching limits of Cleveland and line-haul movements beyond- such limits, and, upon the principles already declared, no discrimination in service can be found.
Under the well-known rules many times laid down by this court, relating to review by this, court of the orders of the public utilities commission, it cannot be found by this court, as a matter of law, that the commission’s orders in the instant case were unreasonable or unlawful.

Order affirmed.

Wanamaker, Robinson, Jones and Matthias, JJ. concur.